## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

DONNA R. SPURLING,

        Plaintiff,

v.                               CIVIL ACTION NO.   2:24-cv-00614

METROPOLITAN LIFE INSURANCE COMPANY, et al.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are three motions: (1) a Motion to Dismiss by Defendant Fairmont State University Board of Governors ("FSUBOG"), (ECF No. 13); (2) a Motion to Dismiss by Defendant West Virginia Board of Risk and Insurance Management ("WVBRIM"), (ECF No. 12); and (3) a Motion to Amend by Plaintiff Donna Spurling ("Plaintiff"), (ECF No. 53).   For the reasons discussed below, FSUBOG's Motion to Dismiss, (ECF No. 13), is **GRANTED**, WVBRIM's Motion to Dismiss, (ECF No. 12), is **GRANTED**, and Plaintiff's Motion to Amend, (ECF No. 53), is **DENIED**.

### I.    BACKGROUND

This matter arises out of an asbestos contamination in the State of West Virginia.   (*See generally* ECF No. 1-4.)   According to the Second Amended Complaint, the State became aware of the existence and dangers of asbestos in certain hospitals, colleges, and universities as early as 1984.   (*See, e.g.*, *id.* at 15–16, ¶¶ 20–24.)   In response, the State allegedly obtained insurance

1

coverage for employees exposed to asbestos.  (*Id.* at 25–26, ¶ 50.)   It is undisputed that the State *did not* obtain insurance for nonemployees exposed to asbestos—*i.e.*, students.  (*Id.*; ECF No. 32 at 9; ECF No. 33 at 14.)   This gap in insurance coverage prevents students who have been exposed to asbestos in State facilities from recovering damages from the State through a lawsuit.  W. Va. Code § 29-12-5(a)(4) ("[N]othing herein shall bar a state agency . . . from relying on the Constitutional immunity granted the State of West Virginia against claims or suits . . . not covered by . . . insurance.").

Plaintiff is one of these students.   In February 2022, Plaintiff was diagnosed with incurable lung cancer, which will ultimately kill her.   (ECF No. 1-4 at 11–12, ¶¶ 1, 6.)   As a lifelong non-smoker, (*id.* at 12, ¶ 6), she blames this diagnosis on her alleged exposure to asbestos while she was a nursing student at Fairmont State University from 1998 through 2004,[1] (*id.* at 14, ¶ 17).

Despite the State's preservation of sovereign immunity under West Virginia Code § 29-12-5(a)(4), Plaintiff filed a lawsuit in the Circuit Court of Kanawha County, West Virginia on January 12, 2024.  (ECF No. 1-1 at 2.)   The Second Amended Complaint names Metropolitan Life Insurance Company ("MetLife"), Monongalia County General Hospital Company D/B/A Mon General Hospital ("Mon General Hospital"), United Hospital Center, Inc. ("United Hospital"), West Virginia Health System, Inc. D/B/A West Virginia University Health System ("WVU Health"), Fairmont State University Board of Governors ("FSUBOG"), and West Virginia

---

[1] Specifically, Plaintiff claims she was exposed to asbestos at the following hospitals and medical facilities during her nursing education program: (1) Mon General Hospital in Morgantown, West Virginia; (2) Chestnut Ridge Center in Morgantown, West Virginia; (3) Fairmont Medical Center in Fairmont, West Virginia; and (4) United Hospital Center in Clarksburg, West Virginia.   (ECF No. 1-4 at 14, ¶ 17.)   Plaintiff also claims that she was exposed to asbestos in various buildings at Fairmont State University.   (*Id.*, ¶ 18.)

Board of Risk and Insurance Management ("WVBRIM") as defendants, (*see* ECF No. 1-4 at 10), and asserts eighteen (18) causes of action against these defendants,[2] (*see id.* at 36–78).

Relevantly, the Second Amended Complaint alleges that FSUBOG has allowed asbestos-containing materials to remain inside its campus buildings, despite having knowledge of the serious health hazard it poses to students and employees since at least 1984. (*Id.* at 14, 26 ¶¶ 19, 52.) Plaintiff asserts that FSUBOG does not inform or warn *anyone* of this hazard. (*Id.* at 33, ¶¶ 67–68.) Plaintiff also claims that FSUBOG has never requested insurance coverage for students exposed to asbestos in its buildings. (*Id.* at 32–33, ¶ 63.)

In a similar vein, Plaintiff states that WVBRIM is responsible for securing adequate insurance coverage for liabilities of state agencies, including universities. (*Id.* at 13, ¶ 13 (citing W. Va. Code § 29-12-5, *et seq.*).) Yet, despite being aware of the asbestos contamination in the State's public buildings, WVBRIM allegedly declined to purchase insurance to cover students' injuries caused by the asbestos. (*Id.* at 23–24, ¶¶ 43, 45.) The Second Amended Complaint seems to imply that WVBRIM intentionally secured insurance that excluded nonemployees in order to avoid liability under West Virginia Code § 29-12-5(a)(4). (*See id.* at 25–26, ¶ 50; *see also id.* at 33, ¶ 64; *id.* at 61–62, ¶ 175.)

On October 25, 2024, FSUBOG removed this action. (ECF No. 1.) Although the causes of action in the Second Amended Complaint are unclear, to say the least, the following fourteen counts remain: (1) Count One: Negligence against "Premises Owner Defendants;"[3] (2) Count Two: "Intentional Tort" against Premises Owner Defendants; (3) Count Three:

---

[2] Because MetLife was later voluntarily dismissed as a defendant, (ECF No. 77), only fourteen (14) counts remain.

[3] Although the Second Amended Complaint does not define which defendants constitute the "Premises Owner Defendants," (*see generally* ECF No. 1-4), these defendants appear to be Mon General Hospital, United Hospital, and WVU Health. (*See id.* at 34–35.)

"Misrepresentations" against the Premises Owner Defendants; (4) Count Four: undefined claim against Mon General Hospital; (5) Count Five: undefined claim against WVU Health; (6) Count Six: undefined claim against United Hospital; (7) Count Seven: undefined claim against FSUBOG; (8) Count Twelve: "Fraudulent Concealment and Misrepresentation" against FSUBOG; (9) Count Thirteen: Substantive Due Process violation under 42 U.S.C. § 1983 against FSUBOG and WVBRIM; (10) Count Fourteen: Procedural Due Process violation under 42 U.S.C. § 1983 against FSUBOG and WVBRIM; (11) Count Fifteen: Conspiracy to violate Substantive and Procedural Due Process under 42 U.S.C. § 1983 against FSUBOG and WVBRIM; (12) Count Sixteen: Violation of the Americans with Disabilities Act ("ADA") against FSUBOG; (13) Count Seventeen: Violation of the ADA against WVBRIM; (14) Count Eighteen: Violation of Equal Protection Clause under 42 U.S.C. § 1983 against FSUBOG and WVBRIM.   (ECF No. 1-4 at 36–78.)

On December 9, 2024, WVBRIM filed the pending motion to dismiss.   (ECF No. 12.)   A response, (ECF No. 30), and reply, (ECF No. 33), were filed.[4]   Also on December 9, 2025, FSUBOG filed the pending motion to dismiss.   (ECF No. 13.)   A response, (ECF No. 27), and reply, (ECF No. 34), were filed.   Both FSUBOG and WVBRIM assert sovereign immunity in their motions.

Plaintiff then moved to amend her complaint on January 22, 2025, seeking to add Jennifer Kinty ("Kinty"), Chairperson of FSUBOG, and Joseph Price ("Price"), Chairman of WVBRIM,

---

[4] Plaintiff also filed a Motion for Leave to File a Limited Surreply.   (ECF No. 37.)   Generally, a surreply is permitted when a party seeks to respond to new material that an opposing party has introduced for the first time in its reply brief. *See United States v. Purdue Pharma L.P.*, 2012 WL 12930668, * 1 (S.D. W. Va. May 7, 2012) (J. Berger) (allowing the filing of a surreply concerning new evidence the opposing party did not have the opportunity to contest). Whereas, in this instance, Plaintiff seeks to file a surreply to provide additional evidence in "further support for [her] previously stated position."   (ECF No. 37 at 1.)   Therefore, Plaintiff's motion, (ECF No. 37), is **DENIED**.

as defendants in an attempt to defeat the sovereign immunity arguments.   (ECF No. 53.)

WVUBRIM and FSUBOG filed responses.   (ECF Nos. 60, 62.)   Plaintiff did not file a reply.

As such, these three motions are fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

It is axiomatic that a court must find it has jurisdiction before determining the validity of any claims brought before it.   *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).   "The burden of showing the existence of subject matter jurisdiction rests on the plaintiff."   *Adkins v. United States*, 923 F. Supp. 2d 853, 857 (S.D. W. Va. 2013) (citation omitted).   "If the plaintiff fails to meet this burden, then the claim must be dismissed."   *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (citing *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)).

It is firmly established that the Eleventh Amendment bars an individual citizen from bringing a suit in federal court against a sovereign state.   *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) (citation omitted); *see also Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (construing the Eleventh Amendment "to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state" (internal quotation marks and citation omitted)).   While sovereign immunity is "not a true limit on the subject-matter jurisdiction of federal courts, the Eleventh Amendment is a block on the exercise of that jurisdiction."   *Id.* (quotation marks and citations omitted).   "Given this nexus between subject matter jurisdiction and sovereign immunity, the Fourth Circuit has not yet resolved whether a motion to dismiss based on sovereign immunity is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6)."   *A.M. v. Demetro*, Civ. Act. No. 2:22-00421, 2024 WL 218139, at *1 (S.D. W. Va. Jan. 19, 2024) (citation omitted).   Still, "the

trend has been to treat the assertion of Eleventh Amendment immunity as motions under Rule 12(b)(1)." *Wriston v. W. Virginia Dep't of Health & Hum. Res.*, No. 2:20-CV-00614, 2021 WL 4150709, at \*2 (S.D. W. Va. Sept. 13, 2021) (Johnston, J.); *see also Cornell v. W. Virginia Div. of Corr. & Rehab.*, No. 2:24-CV-00120, 2024 WL 4368991, at \*3 (S.D. W. Va. Oct. 1, 2024) (Berger, J.) (quoting *Skaggs v. W. Reg'l Jail*, No. 3:13-3293, 2014, WL 66645, at \*4 (S.D. W. Va. Jan. 8, 2014) (Chambers, J.)).

Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: (1) a facial attack or (2) a factual attack. *See Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024). Under a facial attack, "the defendant contends that the allegations in the complaint are insufficient to confer subject-matter jurisdiction." *Id.* (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Thus, "the facts in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* However, before giving allegations the presumption of truth, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Saunders v. Jividen*, No. 2:21-cv-00250, 2024 WL 3307849, at \*3 (S.D. W. Va. May 24, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

If, on the other hand, the defendant makes a factual challenge and asserts the plaintiff's jurisdictional allegations are simply untrue, the plaintiff's allegations are given less procedural protection. *Kerns*, 585 F.3d at 192 (citation omitted). In those cases, the court ordinarily does not apply the presumption of truthfulness, and the court may "decide disputed issues of fact with

respect to subject matter jurisdiction." *Id.* In doing so, the "court may then go beyond the allegations of the complaint and *in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding." *Id.* (internal quotation marks and citation omitted).

Yet, a third situation exists when facial and factual challenges are indivisible because "the jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Id.* at 193 (internal quotation marks and citations omitted). In those instances, a court should presume the truthfulness of the allegations. *Id.* Additionally, the court should provide "the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Id.*

In summary, the Fourth Circuit held that for facial challenges "the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Id.* For factual challenges, "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id.* For inextricably intertwined challenges, "the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Id.* (citation omitted).

### III.    DISCUSSION

The Defendants move to dismiss all claims against them in the Second Amended Complaint. Both argue that, as West Virginia state agencies, they are entitled to sovereign immunity under the Eleventh Amendment. (ECF No. 14; ECF No. 21 at 4–11.) As discussed below, FSUBOG and WVBRIM must be dismissed because they are entitled to sovereign

immunity.[5]   Although Plaintiff seeks to add individual board members to defeat the Defendants' sovereign immunity arguments, such an amendment would be futile.   Each issue is discussed in turn below.

### A.  Sovereign Immunity

"The Eleventh Amendment bars suits in federal court by citizens against unconsenting states and state agencies."  *Jemsek v. Rhyne*, 662 F. App'x 206, 210 (4th Cir. 2016) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100); *see also Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  However, "[t]he Eleventh Amendment bar to suit is not absolute." *Feeney*, 495 U.S. at 304 (1990).   Three narrow exceptions exist to that constitutional limitation. *Lee-Thomas v. Prince George's Cnty. Public Schools*, 666 F.3d 244, 248 (4th Cir. 2012).

First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority."  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (internal quotation marks and alterations omitted).   Second, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).   Third, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Gibbons v. Gibbs*, 99 F.4th 211, 214 (4th Cir. 2024) (explaining that the *Ex parte Young* exception also "allows suits for declaratory or injunctive relief against state officers in their official capacities") (quotation marks removed).

---

[5] WVBRIM also asserts that Plaintiff's § 1983 and ADA claims fail as a matter of law.  (ECF No. 21 at 11–20.) Because suit is barred by the Eleventh Amendment, the Court only addresses the sovereign immunity argument.

In this case, the parties do not dispute that FSUBOG and WVBRIM are state agencies.[6] (*See* ECF Nos. 1-4 at 13, ¶¶ 13–14; 14 at 3; 21 at 4.)   Plaintiff offers various theories on how FSUBOG and WVBRIM, respectively, are not protected by sovereign immunity.   (*See* ECF Nos. 27, 30.)   However, as discussed below, none of the exceptions to sovereign immunity exist in this case.

1.   Fairmont State University Board of Governors

In her response in opposition to FSUBOG's motion to dismiss, Plaintiff asserts three reasons why FSUBOG is not protected by sovereign immunity.   (ECF No. 27 at 5.)   These theories, which all fail, are discussed below.

i.    *Insurance Coverage*

To start, Plaintiff appears to argue that the State of West Virginia has waived sovereign immunity under West Virginia Code § 29–12–5.   (ECF No. 27 at 6–7.)   In the Fourth Circuit, "a state's removal of a suit to federal court waives [State] sovereign immunity only if the state has consented to suit in its own courts."   *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020). This requires a "clear statement (like in a statute or regulation) to indicate such consent."   *Id.*   To that extent, West Virginia Code § 29–12–5 contains a direct and explicit waiver of immunity:

> Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits: Provided, That nothing herein shall bar a state agency or state instrumentality from relying on the constitutional immunity granted the State of West Virginia against claims or suits arising from or out of any state property, activity or responsibility not covered by a policy or policies of insurance: Provided, however, That nothing herein shall bar

---

[6] To be clear, though, FSUBOG is regulated under W. Va. Code § 18B-2A-1 *et seq.*, which makes it an arm of the State, *see* W. Va. Code § 18B-1-2; W. Va. Code § 18B-2A-1(b).   WVBRIM is also a state agency.   *See State ex rel. Hum. Res. Dev. And Emp., Inc. v. Bd. of Risk & Ins. Mgmt. of W. Virginia*, 590 S.E.2d 653, 655 (W. Va. 2003).

the insurer of political subdivisions from relying upon any statutory immunity granted such political subdivisions against claims or suits.

W. Va. Code § 29-12-5(a)(4).

Section 29-12-5(a)(4) thus provides an exception to sovereign immunity under the West Virginia Constitution where (1) a state agency has acquired liability insurance with legislative authorization and (2) the plaintiff suing the agency seeks recovery only "under and up to the limits" of the available insurance coverage. *See Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 310 S.E.2d 675, 688 (W. Va. 1983). Consequently, "the State is still constitutionally immune from claims arising out of any activity or responsibility that is *not covered under its policy*." *Wrenn v. W. Va. Dept. of Transp.*, 686 S.E.2d 75, 79 (W. Va. 2009) (emphasis added); *Davari v. W. Va. Univ. Bd. of Governors*, 857 S.E.2d 435, 442–43 (W. Va. 2021) (noting that where a claim falls outside of the State's insurance coverage, the State and its agencies remain constitutionally immune). The Supreme Court of Appeals of West Virginia ("SCAWV") has also held that this exception to sovereign immunity "applies only to immunity under the West Virginia Constitution." *W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 662 (2015);[7] *see also Hood v. W. Virginia Dep't of Health & Hum. Res.*, No. 2:22-CV-00265, 2023 WL 350409, at *3 (S.D. W. Va. Jan. 20, 2023) (Goodwin, J.) (collecting cases that held that § 29-12-5 only waives the state's immunity from suit in state court).

In this case, Plaintiff argues that FSUBOG is not entitled to sovereign immunity to the extent that she is seeking damages "under and up to the limits of [FSUBOG's] liability insurance coverage." (ECF No. 27 at 6; *see also* ECF No. 1-4 at 79, ¶ 269.) Although FSUBOG counters

---

[7] Because a state's waiver of sovereign immunity involves a question of state law, the federal courts are obligated to defer to the decision of the state's highest court on the issue. *Palmer v. Ohio*, 248 U.S. 32, 34 (1918).

that it "lacks insurance coverage" for Plaintiff's claims, (ECF Nos. 14 at 3; 32 at 3), Plaintiff asserts that this "position is new," (ECF No. 27 at 6).[8]  Plaintiff further contends that the Court must accept as true her allegations "that the FSUBOG has insurance coverage and that insurance coverage applies to this case." (*Id.*)

Well, ask and ye shall receive.   Accepting Plaintiff's allegations as true, the State of West Virginia "opted not to purchase insurance" for her asbestos exposure claims.   (ECF No. 1-4 at 12, ¶ 4; *see also id.* at 23, ¶ 42 ("[T]he state does not maintain insurance coverage against exposure to toxic substances such as asbestos.").)   Specifically, the Second Amended Complaint repeatedly states that FSUBOG does not have insurance for her asbestos exposure claims.   (*See e.g., id.* at 32–33, ¶ 63; *id.* at 57, ¶¶ 148–55; *id.* at 63, ¶¶ 182, 184; *id*. at 57, ¶ 197; *id.* at 59, ¶ 206; *id.* at 71–72 ¶¶ 221–22, 224–28; *id.* at 77–78 ¶¶ 254, 260.)

It is true that two times, in the entire 70-page Second Amended Complaint with 270 paragraphs, Plaintiff requests damages "under and up to the limits of [FSUBOG]'s liability insurance coverage."   (*Id.* at 49; 79, ¶ 269.)   However, prayers for relief are not factual allegations, *see* Allegation, *Black's Law Dictionary* (12th ed. 2024), and Plaintiff's simple recitation of language from West Virginia Code § 29-12-5 in her requested relief—which is clearly nothing more than a feeble attempt to defeat FSUBOG's sovereign immunity protection—cannot undermine her constant allegations that FSUBOG does not have insurance for her asbestos exposure claims.[9]

---

[8] The Court notes that FSUBOG previously moved to dismiss the First Amended Complaint because Plaintiff did not allege that FSUBOG had insurance, which included a letter from AIG, dated January 26, 2024, indicating that Fairmont State University did not have insurance coverage.   (*See* ECF No. 1-4 at 4, ¶ 13.)   Plaintiff moved to amend the First Amended Complaint specifically to "allege facts and claims showing that FSUBOG's sovereign immunity defense is meritless."   (*Id.* ¶ 14.)   So, FSUBOG's alleged lack of insurance coverage is far from a "new" position.

[9] This also begs the question: what damages would Plaintiff be entitled to if the award is limited to "under and up to the limits of" something that does not exist?   Zero?   That's just bad lawyering.

As a last-ditch effort, Plaintiff suggests that FSUBOG may have additional insurance based on prior settlement negotiations and further demands discovery in order to defeat FSUBOG's sovereign immunity protection.   (ECF No. 27 at 6.)   Citing to *Kerns*, Plaintiff claims discovery is warranted to resolve the factual dispute of whether FSUBOG has insurance coverage for asbestos exposure.   (*Id.*)   Plaintiff is wrong.

As discussed above, *Kerns* addressed the divergent approaches to resolving subject matter jurisdiction challenges.   In this case, FSUBOG does not dispute any of the jurisdictional facts alleged in Plaintiff's Second Amended Complaint.   (*See* ECF Nos. 14, 32.)   Why would it?   The Second Amended Complaint states that FSUBOG does not have insurance coverage for asbestos exposure.   (*See generally* ECF No. 1-4.)   So, based on the Second Amended Complaint, there is no factual dispute that FSUBOG does not have insurance coverage.   (*See id*; *see also* ECF No. 14, 32.)   Thus, FSUBOG's motion to dismiss is assessed under the Rule 12(b)(6) standard, and Plaintiff is not entitled to discovery.   *See Evans,* 105 at 615 (citing *Kerns*, 585 F.3d at 192).

Plaintiff cannot circumvent this standard by arguing, in her Response, that FSUBOG may have insurance coverage.   This flies in the face of the allegations in the Second Amended Complaint, which Plaintiff specifically filed to defeat FUSBOG's claims of sovereign immunity.[10] (*See* ECF No. 1-4 at 4, ¶¶ 13–14.)   If Plaintiff's counsel wanted to try, *again*, to fix this issue, a

---

[10] In her Motion for Leave to File a Second Amended Complaint, Plaintiff asserts that FSUBOG suddenly withdrew from settlement negotiations, contending "for the very first time that it had no insurance coverage."   (ECF No. 1-4 at 4, ¶¶ 12, 14.)   Thus, Plaintiff moved to file the Second Amended Complaint so she could "allege facts and claims showing that FSUBOG's sovereign immunity defense is meritless."   (*Id.*, ¶ 14.)   Specifically, Plaintiff claimed that her "amendment alleges what she believed all along," which is that "FSUBOG has applicable coverage and is not immune to litigation."   (*Id.* at 5, ¶ 18.)   Curiously, though, instead of alleging that FSUBOG had insurance coverage, Plaintiff specifically alleged FSUBOG *does not have insurance* but hedged her requested relief, as discussed above.

rogue about-face in a response to a motion to dismiss is far from proper procedure.[11]   *See generally* Fed. R. Civ. P. 15.

Thus, because the Second Amended Complaint only alleges that FSUBOG does not have insurance coverage for Plaintiff's claims, Plaintiff's argument based on West Virginia Code § 29–12–5 fails.

ii.    *Ex parte Young*

Next, Plaintiff argues that the *Ex parte Young* exception applies to her § 1983 and ADA claims.   "The *Ex parte Young* exception 'allows suits against state officers for prospective equitable relief from ongoing violations of federal law.'" *Doe v. Univ. of N. Carolina Sys.*, 133 F.4th 305, 318 (4th Cir. 2025) (quoting *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001)); *cf. Edelman*, 415 U.S. at 668 (explaining that the Eleventh Amendment prohibits a claimant from seeking retrospective relief that "requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation" for the past wrong).   Under this exception, a state official who acts in violation of federal law is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex parte Young*, 209 U.S. 123, 160 (1908).   To determine whether a suit may proceed under *Ex parte Young*, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).

---

[11] In fact, in Plaintiff's Motion for Leave to File a Third Amended Complaint, Plaintiff *still* does not allege that FSUBOG has insurance coverage for her asbestos exposure claims.   (*See generally* ECF No. 53-1.)

Plaintiff claims "[t]hat is exactly what [she] has alleged here." (ECF No. 27 at 7.) It is unclear whether Plaintiff's counsel does not remember what he alleged or has a fundamental misunderstanding of the law and/or the English language. Regardless, a straightforward inquiry answers that the *Ex Parte Young* exception absolutely does not apply here.

To start, Plaintiff does not seek equitable relief under Counts Thirteen, Fourteen, or Fifteen for FSUBOG's alleged violations of § 1983. (*See* ECF No. 1-4 at 65, 68, 69 (all seeking "an amount deemed just and proper by the jury to adequately compensate Plaintiff for Plaintiff's damages with interest and cost of suit").) In fact, she seeks retrospective damages, (*see id.*), which is the **opposite** of the *Ex parte Young* exception, *see Edelman*, 415 U.S. at 668. As such, the *Ex parte Young* exception does not apply to Counts Thirteen, Fourteen, or Fifteen.

Plaintiff's ADA claim under Count Sixteen and § 1983 claim under Count Eighteen fair no better. While Plaintiff does seek injunctive relief under these counts, she seeks such equitable relief from FSUBOG—not a state official, (ECF No. 1-4 at 72, ¶ 228; *id.* at 78, ¶ 260), and it is well-settled that the *Ex parte Young* exception does not apply to state agencies, *see, e.g.*, *Alabama v. Pugh*, 438 U.S. 781 (1978) (holding that, unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, a State cannot be sued directly in its own name regardless of the relief sought); *Missouri v. Fiske*, 290 U.S. 18, 27 (1933) (explaining that the Eleventh Amendment applies "to suits in equity" when such equitable remedies are asserted "by an individual against a State"); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (explaining that the *Ex parte Young* exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought"). As such, the *Ex Parte Young* exception does not apply to Counts Sixteen or Eighteen.

14

Therefore, regardless of whether the Second Amended Complaint asserts a viable, ongoing violation of federal law,[12] Plaintiff's invocation of the *Ex Parte Young* exception fails.

### iii.    Collateral Estoppel

Lastly, Plaintiff argues that FSUBOG is collaterally estopped from asserting sovereign immunity.  (ECF No. 27 at 9.)   For support, Plaintiff asserts that the State of West Virginia did not raise the prospect of sovereign immunity in a 1987 state court case related to asbestos contamination in state college campuses, *State v. AAER, et al.*, 86-C-458 (W. Va. Mon. Cnty. Cir. Ct. 1987).  (*Id.*)   Plaintiff theorizes that, because the defense of sovereign immunity "was not raised" by the State in that case, the State, and by extension FSUBOG, is collaterally estopped from asserting it now.  (*Id.*)

This argument is borderline sanctionable.

The doctrine of collateral estoppel "bars *successive litigation of an issue* of fact or law *actually litigated and resolved* in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotations and citations omitted) (emphasis added).   However, as Plaintiff acknowledges, the issue of sovereign immunity was not even raised—not to mention determined— in *State v. AAER*.  (*See, e.g.*, ECF No. 27 at 11 (arguing that the State "had a full and fair opportunity to claim sovereign immunity" but "did not").)   FSUBOG fully engages with the ridiculous nature of Plaintiff's collateral estoppel argument, (*see* ECF No. 32 at 12), but the bottom line is this: it is nonsensical.  The Court has no difficulty concluding that FSUBOG is not collaterally estopped from claiming sovereign immunity.

---

[12] The parties dispute the exact nature and viability of Plaintiff's constitutional claims.  (*See, e.g.*, ECF Nos. 27 at 7– 9; 32 at 7.)

Therefore, because FSUBOG is entitled to sovereign immunity, its motion to dismiss, (ECF No. 13), is **GRANTED**.

2. <u>West Virginia University Board of Risk and Insurance Management</u>

In her response in opposition to WVBRIM's motion to dismiss, Plaintiff asserts four reasons why WVBRIM is not protected by sovereign immunity. (*See* ECF No. 30 at 4–8.) These theories, which all fail, are discussed below.

       i.    *Waiver by Prior Conduct*

Plaintiff first argues that WVBRIM has waived sovereign immunity by paying claims, which were not covered by insurance, in the past. (ECF No. 30 at 5–6 (claiming that WVBRIM "has a history of waiving the immunity . . . . and going to great efforts to ensure the scheme goes undetected by unsuspecting claimants and their counsel").) Plaintiff also argues that the State has waived sovereign immunity by engaging in settlement negotiations with her. (*See id.* at 6–7.)

These arguments fail because any waiver of this sovereign immunity must be "unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980), (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). The Supreme Court has noted "that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto *are not to be implied*." *Soriano v. United States*, 352 U.S. 270, 276 (1957) (emphasis added); *see also United States v. Kubrick*, 444 U.S. 111, 117–18 (1979); *Lehman v. Nakshian*, 453 U.S. 156, 160–61 (1981). Plaintiff's allegations that FSUBOG engaged in settlement negotiations and that WVBRIM has voluntarily paid out claims not covered by insurance fall well short of an unequivocal expression of waiver.

Therefore, Plaintiff's waiver arguments based on WVBRIM's alleged prior conduct fails.

16

ii.    *Removal to Federal Court*

Plaintiff also argues that WVBRIM waived sovereign immunity protection by consenting to the removal of this case to federal court.   (ECF No. 30 at 7–8.)   "[A] state's removal of a suit to federal court waives [State] sovereign immunity only if the state has consented to suit in its own courts."   *Biggs*, 953 F.3d at 241.   WVBRIM has not waived sovereign immunity in state court for Plaintiff's claims because it lacks insurance coverage, as discussed more fully below.   Thus, removal to federal court does not waive WVBRIM's sovereign immunity.[13]

iii.    *Jurisdictional Discovery*

Plaintiff yet again contends that discovery is the only way she can determine what rights she has under West Virginia state law, such as "how she received such substantial offers of settlement only to have them quickly ripped away."   (ECF No. 30 at 6.)   Similarly, Plaintiff argues that discovery is proper to address jurisdictional issues because "[t]his case presents many factual questions about the validity of defendants' immunity waiver."   (*Id.*)   For support, Plaintiff reiterates that FSUBOG engaged in settlement negotiations.   (*Id.* at 7.)   Uncontested by anyone, Plaintiff asserts that she "has clearly alleged a concern that defendants are being deceptive about their insurance coverage and payout policies."   (*Id.*)

As discussed above, jurisdictional discovery is inappropriate because WVBRIM does not dispute any of the jurisdictional facts alleged in Plaintiff's Second Amended Complaint.   (*See* ECF Nos. 21, 33.)   The Second Amended Complaint repeatedly states that WVBRIM does not have insurance coverage for Plaintiff's asbestos exposure claims.   (ECF No. 1-4 at 12, ¶ 4; *id.* at

---

[13] Plaintiff also "reserve[d] the right to amend her complaint to include the individual members of [WV]BRIM." (ECF No. 30 at 9.)   That's not how amendments work under the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 15, but Plaintiff nonetheless filed a proper Motion to Amend, (ECF No. 53), which is addressed below.

23–24, ¶¶ 42–45; *id.* at 25–26, ¶ 50; *id.* at 61, ¶¶ 171, 175; *id.* at 62–64, ¶¶ 179–82, 184–86; *id.* at 66–67 , ¶¶ 194–96, 199; *id.* at 68, ¶ 206; *id.* at 74–76, ¶ 240, 242–44, 246–47; *id.* at 77, ¶ 254.) WVBRIM agrees: it does not have insurance coverage for Plaintiff's asbestos exposure claims. (ECF Nos. 21 at 6; 33 at 3.)  So, based on the Second Amended Complaint, there is no factual dispute that WVBRIM does not have insurance coverage for Plaintiff's claims.  (*See id*; *see also* ECF No. 21, 33.)  Thus, WVBRIM's motion to dismiss is assessed under the Rule 12(b)(6) standard, and Plaintiff is not entitled to discovery.  *See Evans,* 105 at 615 (citing *Kerns*, 585 F.3d at 192).

The Court understands Plaintiff's concerns about the State's insurance coverage policies. However, states are immune from suit under the Eleventh Amendment.  U.S. Const. amend. XI; *Garrett*, 531 U.S. at 363 (explaining that "nonconsenting States may not be sued by private individuals in federal court").  One of the few exceptions to this jurisdictional bar is when a state waives its right to immunity and consents to suit.  *See Lapides*, 535 U.S. at 618.  Yet, states are not *required* to voluntarily waive their immunity—*i.e.*, West Virginia was not required to voluntarily waive its immunity and consent to suits involving claims arising out of an activity or responsibility covered under an insurance policy.  *But cf.* W. Va. Code § 29-12-5(a)(4).  By extension, West Virginia is not required to obtain insurance coverage for every potential claim against it.  *Accord* W. Va. Code § 29-12-5(a)(3) ("The board is not required to provide insurance for every state property, activity or responsibility.").  There may be avenues of relief for Plaintiff based on WVBRIM's alleged discriminatory practices,[14] but, as it currently stands, sovereign immunity protects WVBRIM from this Court's purview.

---

[14] Plaintiff relies on *State ex rel. Hum. Res. Dev. And Emp., Inc. v. Bd. of Risk & Ins. Mgmt. of W. Virginia*, 590 S.E.2d 653 (W. Va. 2003) ("*State v. BRIM*") for the proposition that WVBRIM's discretion under West Virginia Code § 29-

Therefore, because WVBRIM is entitled to sovereign immunity, its motion to dismiss, (ECF No. 12), is **GRANTED**.

### B. Motion to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, unless a party is permitted to amend its pleading as a matter of course, it "may amend its pleading only with the opposing party's written consent or the court's leave.   The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).   However, it "may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)); *see Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (clarifying that "[a] district court's denial of leave to amend is appropriate" only under these three circumstances); *cf. Foman v. Davis*, 371 U.S. 178, 182, (1962) (explaining that motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., futility of amendment, etc."). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable

---

12-1, *et seq.* "does not permit the board to go so far as being discriminatory when it procures insurance for the state and its organizations."   (ECF No. 30 at 5.)   The plaintiff in that case sought a writ of mandamus to require WVBRIM to insure a charitable organization under § 29-12-5(b) [2003].   *See State v. Brim*, 590 S.E.2d at 655.   The SCAWV noted that, although a writ of mandamus is usually inappropriate to control the discretion of a state office, one may nevertheless be issued when the office acts "capricious or arbitrary or under the misapprehension of law."   *Id.*   From there, the SCAWV held that, under the statute at that time, WVBRIM had "no factual or legal grounds upon which to arbitrarily base the exercise of its statutory discretion" so as to refuse to insure a charitable organization while providing coverage to "all other such charitable entities."   *Id.*   However, Plaintiff is seeking damages and equitable relief—not a writ of mandamus to require WVBRIM to procure insurance for its students.   So, *State v. BRIM* is inapposite and inoperative in this matter.

rules and accompanying standards[.]"  *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

Here, Plaintiff moves to amend the Second Amended Complaint only "to correct an alleged defect in her Second Amended Complaint that Defendants BRIM and FSUBOG are not a 'person' under 42 U.S.C. § 1983."  (ECF No. 53 at 2, ¶ 5.)  To correct this defect, Plaintiff seeks to add Kinty, Chairperson of FSUBOG, and Price, Chairman of WVBRIM, "in their individual capacities," "for depriving Plaintiff of her rights secured under the United States Constitution." (*Id.*, ¶ 4.)

However, FSUBOG and WVBRIM argue that Plaintiff's motion should be denied as futile. (ECF Nos. 60, 62.)  Specifically, both argue that, in substance, Plaintiff is suing Prince and Kinty in their official capacities, and, as such, her § 1983 claims are still barred by sovereign immunity. (ECF Nos. 60 at 4–5; 62 at 4–14.)  FSUBOG also argues that Plaintiff's motion should be denied because the omission of Kinty was not a mistake.  (ECF No. 60 at 5–8.)  Each is discussed below.

    1.  <u>Mistake</u>

As an initial matter, FSUBOG argues that Plaintiff's proposed third amended complaint is not timely because it does not relate back to the date of the original complaint.  (ECF No. 60 at 5.)  Specifically, FSUBOG asserts that Plaintiff's omission of Kinty was not a mistake under Rule 15(c).  (*See id.*)  This argument easily fails.

For an amended claim to relate back to the date of the original complaint, "the amendment [must] assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  That

requirement is unquestionably satisfied here.[15]    Further, when, as here, "the amendment changes the party or the naming of the party against whom a claim is asserted," Rule 15(c) has additional requirements:

> [W]ithin the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

The Fourth Circuit has rejected formalism in evaluating "mistake" under Rule 15(c). *Goodman v. Praxair, Inc.*, 494 F.3d 458, 470–71 (4th Cir. 2007).    Rather than focusing on the *reason* behind a plaintiff's mistake, the Fourth Circuit found that "[t]he 'mistake' language is textually limited to describing *the notice* that the new party had, requiring that the new party have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place."    *Id.* at 471 (emphasis added).    This "emphasis on notice, rather than the type of 'mistake' that has occurred, saves [] courts not only from an unguided and therefore undisciplined sifting of reasons for an amendment but also from prejudicing would-be defendants who rightfully have come to rely on the statute of limitations for repose."    *Id.* at 473.

Here, though, FSUBOG does not offer any substantive argument that Kinty did not have notice of the lawsuit.    (*See* ECF No. 60 at 6.)    Instead, FSUBOG only provides a long string cite of cases.    (*See id.*)    Beyond being lazy, this briefing is also unpersuasive.    While some of these

---

[15] As discussed below, none of Plaintiff's substantive allegations or claims change.    Rather, the proposed third amended complaint simply adds the names of Kinty and Price into prior allegations and claims.

cases discuss undue delay as a "declared reason" to deny a motion to amend, none of them involve untimely motions under Rule 15(c).

To the extent that FSUBOG intended to raise an argument based on undue delay, bad faith, dilatory motive, or other declared reason, such an argument is not apparent. This Court is not required "to act as an advocate for a *pro se* litigant," *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978), or "conjure up questions never squarely presented," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). It goes without saying that the Court will certainly not do so for presumably educated, licensed attorneys.

### 2. Sovereign immunity

"Cases involving the intersection of sovereign immunity, Section 1983, and the *Ex parte Young* doctrine can pose difficult legal questions." *Gibbons*, 99 F.4th at 216. As discussed above, sovereign immunity bars suit against states and state agencies. *Rhyne*, 662 F. App'x at 210; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (explaining that Eleventh Amendment immunity protects both the state itself and its agencies, divisions, departments, officials, and other "arms of the state"). Thus, state actors acting in their official capacity are entitled to sovereign immunity against claims for monetary damages because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "is no different from a suit against the state itself." *Will*, 491 U.S. at 71; *see also Huang v. Board of Governors*, 902 F.2d 1134, 1138 (1990) ("[I]t is well settled that the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities." (citing *Edelman*, 415 U.S. at 663)); *Gibbons*, 99 F.4th at 214 (explaining that "suits against state officials in their official capacity are treated as suits

22

against the State and are thus barred by sovereign immunity to the extent that they seek monetary relief" (internal quotations and citations omitted)).    The *Ex parte Young* exception, though, "permits suits for prospective injunctive relief against state officials acting in violation of federal law."    *Hawkins*, 540 U.S. at 437; *see also Will*, 491 U.S. at 71, n.10 (explaining that when "a state official in his or her official capacity" is "sued for injunctive relief," such "actions . . . are not treated as actions against the State," a distinction that is "commonplace in sovereign immunity doctrine") (internal quotations and citations omitted)); *Reed v. Goertz*, 598 U.S. 230, 234 (2023).

Section 1983 does not abrogate sovereign immunity.    *Quern v. Jordan*, 440 U.S. 332, 342 (1979).    However, this statute permits individuals to advance "individual capacity" claims against state officials acting under color of state law.    *See* 42 U.S.C. § 1983; *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.").    "A public [official] acts under color of state law while acting in [their] official capacity or while exercising [their] responsibilities pursuant to state law."    *West v. Atkins*, 487 U.S. 42, 50 (1988).

When state officials are sued in their individual capacity, they are not protected by sovereign immunity because they "'come to court as individuals,' and the real party in interest is the individual, not the sovereign."    *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) (quoting *Hafer v. Melo*, 502 U.S. 21, 27 (1991)).    Thus, official capacity suits seeking money damages under § 1983 are barred by sovereign immunity, while personal capacity suits are not.    *Hafer*, 502 U.S. at 30–31 (explaining that Section 1983 individual capacity claims are not subject to Eleventh Amendment immunity analysis because "the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983").

23

So, in short: sovereign immunity bars suit for monetary damages against a state official in his or her official capacity.  *Will*, 491 U.S. at 71.  Sovereign immunity does *not* bar suit for prospective injunctive relief against a state official in his or her official capacity.  *Id.* at 71, n.10. Further, sovereign immunity does *not* bar suit for monetary damages against a state actor in his or her personal capacity.  *Hafer*, 502 U.S. at 30–31.

In this case, Kinty and Price are state officials.[16]  Despite Plaintiff's intent to assert claims against Kinty and Price in their individual capacities, the proposed third amended complaint asserts § 1983 claims against Kinty and Price in their respective official capacities.  To that extent, Counts Thirteen, Fourteen, and Fifteen, which seek monetary damages, are barred by sovereign immunity.  Further, while Count Eighteen seeks injunctive relief, the *Ex parte Young* exception does not apply.  Thus, all of the § 1983 claims in the proposed third amended complaint are barred by sovereign immunity and are, thus, futile.  Each issue is discussed below.

### i.    Official Capacity

As noted above, there is a difference between state officials acting in their official capacities and officials acting in their personal capacities under color of state law.  *Hafer*, 502 U.S. at 22–23.  Yet, this distinction "continues to confuse lawyers and confound lower courts," *Graham*, 473 U.S. at 165, as the state action doctrine necessarily requires an officer to act in his official capacity, *see West*, 487 U.S. at 50.  Thus, in *Adams v. Ferguson*, 884 F.3d 219 (4th Cir.

---

[16] In West Virginia, FSUBOG and WVBRIM are state agencies, as discussed above.  Because FSUBOG and WVBRIM are considered state agencies, their employees are state employees, and the Eleventh Amendment bars any official capacity claims seeking monetary relief.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n.18 (1982) ("[S]tate employment is generally sufficient to render the defendant a state actor.").

2018), the Fourth Circuit provided guidance on how to determine whether a § 1983 claim is an official capacity or individual capacity claim.[17]

"[T]he mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action." *Id.* at 225 (quoting *Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir. 2001)). Instead, when a complaint asserts an individual-capacity suit, the Court must determine whether anything "in the remainder of the complaint, or in the record, undermines [that] clear statement" and shows that the state is the real party in interest. *Id.* In *Adams*, the Fourth Circuit concluded that the defendant was, in fact, being sued in her individual capacity, citing two facts: (1) the complaint sought "to recover damages only from [the defendant] herself and ma[de] no mention of relief from the state;" and (2) "the complaint asserts claims against [the defendant], rather than the current" officeholder. *Id.*

In this case, the proposed third amended complaint adds Price as a defendant "in his individual capacity," as "the Chairman of Defendant [WVBRIM]," who "acted at all relevant times in his official capacity and under color of state law." (ECF No. 53-1 at 5, ¶14.) Similarly, Kinty is sued "in her individual capacity," as "the Chairperson of Defendant [FSUBOG], who "acted at all relevant times in her official capacity and under color of state law." (*Id.* ¶ 17.) However, these "mere incantation[s]" of the term "individual capacity" are insufficient to establish individual

---

[17] In *Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014), the Fourth Circuit developed a five-factor test to determine whether an FMLA suit against state officials in their individual capacities nevertheless should be treated as a suit against the state for Eleventh Amendment immunity purposes because the state is the "real, substantial party in interest." WVBRIM argues that Plaintiff's third amended complaint asserts official capacity claims under the *Martin* factors. (ECF No. 62 at 7–10.) However, in *Adams*, the Fourth Circuit explicitly rejected applying the *Martin* factors in the context of § 1983 claims. 884 F.3d at 225-26 (explaining that "[a]pplying the *Martin* factors, which focus on the official character of the defendant's actions, to § 1983 claims would" "undermine the very purpose of § 1983" by "'absolutely immuniz[ing] state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities.'").

capacity claims. *Adams*, 884 F.3d at 225; *see also Iqbal*, 556 U.S. at 678 (instructing courts to set aside legal conclusions under Rule 12(b)(6)).

Instead, "the remainder of the complaint . . . undermines [those] clear statement[s]" and shows that Price and Kinty are being sued in their official capacities. *See Adams*, 884 F.3d at 225. The proposed third amended complaint makes minimal substantive changes to Plaintiff's claims. Plaintiff adds the following paragraphs:

> Defendant Fairmont State University Board of Governors' policies, customs, practices of purposefully exposing unknowing students to asbestos-containing products is the result of intentional decisions made by Defendant Chairperson Jennifer Kinty as the leading member and policy maker of Defendant Fairmont State University Board of Governors.

(ECF No. 53-1 at 21, ¶ 55.)

> As detailed more specifically herein, Defendant West Virginia Board of Risk and Insurance Management's policies, customs, practices of purposefully excluding from insurance coverage certain individuals rendered disabled due to asbestos exposure while insuring similarly situated disabled individuals is the result of intentional decisions made by Defendant Chairman Joseph Price as the leading member and policy maker of Defendant West Virginia Board of Risk and Insurance Management.

(*Id.* at 28, ¶ 68.)

As WVBRIM points out, "[o]ther changes are mere modifications of prior allegations."

(ECF No. 62 at 3.)   For example:

> Nevertheless, Defendant Fairmont State University Board of Governors, *pursuant to policies, procedures, and customs supported by Chairperson Jennifer Kinty*, has represented that it chose not to purchase any insurance coverage for any non-employee injured by exposure to asbestos containing products on its campus.

(ECF No. 53-1 at 52, ¶ 174 (emphasis added).)   The italicized phrase is the only change to the same allegation in the Second Amended Complaint.   (*See* ECF No. 1-4 at 60–61, ¶ 170.) Similarly:

26

Likewise, as set forth more fully above, Defendant West Virginia Board of Risk and Insurance Management, *pursuant to policies, procedures, and customs supported by Chairperson Joseph Price*, chose not to purchase any insurance coverage for any non-employee injured by exposure to asbestos containing products in public buildings, including Fairmont State University.

(ECF No. 53-1, at 53, ¶ 175 (emphasis added).)   The italicized phrase is the only change to the same allegation in the Second Amended Complaint.   (*See* ECF No. 1-4 at 61, ¶ 171.)

Otherwise, as WVBRIM notes, the proposed third amended complaint "does not modify any previously asserted claims, add new facts, or impose new theories of liability."   (ECF No. 62 at 4.)   Instead, Plaintiff simply inserts the names of Kinty and Price into the allegations without any other change.   (*Compare* ECF No. 1-4 *with* ECF No. 53-1; *see also* ECF No. 62 at 3–4 (providing a chart on the insertion of Price's name into allegations without any other change).)   In particular, the proposed third amended complaint does not delineate the facts supporting Plaintiff's § 1983 claims against FSUBOG and WVBRIM and those supporting her § 1983 claims against Kinty and Price, (*see* ECF No. 53-1 at 50–62, 69–71), "indicating that the claims are for the same alleged acts and are therefore identical," *see Dillow v. Virginia Polytechnic Inst. & State Univ.*, No. 7:22CV00280, 2023 WL 2320765, at *9 (W.D. Va. Mar. 2, 2023).

Similarly, the proposed third amended complaint does not request relief solely from Kinty or Price.   (*See generally* ECF No. 53-1.)   In particular, all Plaintiff's § 1983 claims request relief from FSUBOG, Kinty, WVBRIM, and Price.   Of relevance, Counts Thirteen, Fourteen, and Fifteen request monetary damages from FSUBOG, Kinty, WVBRIM, and Price, without specifying how the award should be prorated between these defendants.   (*Id.* at 57, 60, 62.) Because the factual allegations and prayers for relief are identical, it is evident that Kinty and Price are named as extensions of the State.

27

Further, opposite of the complaint in *Adams*, the proposed third amended complaint seeks to asserts claims against two *current* officeholders, (*see* ECF Nos. 60 at 1; 62 at 11; *see also* State of West Virginia Board of Insurance and Risk Management, 2021 Annual Report at 205 (August 28, 2021), available at https://brim.wv.gov/Forms%20and%20Information/Documents/Annual%202021%20Report%20with%20Minutes%20and%20Exhibits.pdf; Fairmont State News, *Kinty Appointed to Serve on Fairmont State University Board of Governors* (July 21, 2021), available at https://www.fairmontstate.edu/news/2021/07/kinty-appointed-servefairmont-state-university-board-governors.aspx),[18] as opposed to anyone who would have been an officeholder during the State's decision not to procure insurance for asbestos exposure, which allegedly happened in 1987, (*see* ECF Nos. 1-4 at 12, ¶4; 53-1 at 3, ¶ 4).   Although Plaintiff alleges that Kinty and Price undertook actions that contributed to her injuries, (*see, e.g.*, ECF No. 53-1 at 53, ¶ 177 (discussing "Kinty's reckless policies, procedures, customs, and decisions not to remove its asbestos-containing products increased exponentially from 1984 to the date of Plaintiff's enrollment at Fairmont State University" in 1998); *see id.* at 55, ¶¶ 188 (alleging that Price did not purchase "any insurance coverage for nonemployees [he] knew as early as 1984 were being exposed to deadly asbestos fibers")), such claims are illogical as Kinty and Price were not officeholders at the time of those decisions.   This, too, indicates that the State is the real party in interest.

Still, viewing the allegations in the light most favorable to the Plaintiff, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007), it could be argued that the proposed third amended complaint also alleges ongoing violations by Kinty and Price, (*see, e.g.*, ECF No. 53-1 at 56, ¶ 190

---

[18] Under Rule 12(b)(6), a court "may properly take judicial notice of matters of public record."   *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal citations omitted).

(alleging that Kinty and Price are "still refusing to secure insurance coverage" for non-employees exposed to asbestos)).   Thus, unlike *Adams*, it may make sense to sue the current officeholders, but only to a certain extent.[19]

At bottom, the proposed third amended complaint adds Kinty and Price without changing the substance of Plaintiff's claims or requested relief.   *See Dillow*, 2023 WL 2320765, at *8 ("Lower courts applying *Adams* have emphasized the importance of the money-damages element of the two-part analysis." (collecting cases).)   Thus, although Plaintiff names Kinty and Price in their "individual capacit[ies]," (*see* ECF No. 53-1 at 5, ¶¶ 14, 17), "the remainder of the complaint . . . undermines [those] clear statement[s]" and shows that the State is the real party in interest, *see Adams*, 884 F.3d at 225.

Therefore, Counts Thirteen, Fourteen, and Fifteen are barred by sovereign immunity because they seek monetary damages from the State.

### ii.    *Ex parte Young*

Count Eighteen seeks injunctive relief in the form of a court order requiring FSUBOG, Kinty, WVBRIM, and Price to procure insurance for nonemployees exposed to asbestos.   (ECF No. 53-1 at 71.)   The *Ex parte Young* "allows suits for declaratory or injunctive relief against state officers in their official capacities."   *Gibbons*, 99 F.4th at 214 (internal quotations and citations omitted).   In form, that is what Plaintiff is requesting, but in substance, she is asking for much more.

Plaintiff wants the State to procure insurance for nonemployees exposed to asbestos. (ECF No. 53-1 at 71.)   If done, these nonemployees would be able to sue the state under West

---

[19] It is still illogical to sue them for alleged constitutional violations that occurred before they were officeholders.

Virginia Code § 29-12-5(a)(4).   This is, in fact, Plaintiff's desired outcome.   (*See* ECF No. 53-1 at 70 (discussing how the State's lack of insurance coverage bars her filing suit and seeking damages against the State).)   So, in effect, Plaintiff is seeking injunctive relief in the form of a court order requiring the State to waive sovereign immunity.

The *Ex parte Young* exception does not reach so far.   Rather, "*Ex parte Young* jurisprudence requires careful consideration of the sovereign interests of the State as well as the obligations of state officials to respect the supremacy of federal law."   *Verizon Maryland, Inc.*, 535 U.S. at 649 (Kennedy, J., concurring); *see also Antrican v. Odom*, 290 F.3d 178, 189 (4th Cir. 2002) (noting that "the scope of interests that *Ex Parte Young* protects in preventing violations of federal law must be carefully circumscribed so as not unduly to erode the important underlying doctrine of sovereign immunity" (internal citation omitted).)   Otherwise, the Eleventh Amendment "would become [a] legal fiction."   *Verizon Maryland*, 535 U.S. at 649 (Kennedy, J., concurring).   Thus, courts "must evaluate the degree to which a State's sovereign interest would be adversely affected by a federal suit seeking injunctive relief against State officials."   *Bragg v. W. Virginia Coal Ass'n*, 248 F.3d 275, 293 (4th Cir. 2001).

It is true that injunctive relief sought under the *Ex parte Young* exception "will almost always, in some sense, affect the State itself."   *Odom*, 290 F.3d at 188 (citing *Coeur d'Alene Tribe*, 521 U.S. at 269).   Some injunctions are allowed even if they might result in an intrusion on a state's sovereignty.   *See Odom*, 290 F.3d at 189.   However, in some cases, special state sovereignty interests will prevent an otherwise proper *Ex parte Young* action from proceeding. *See Coeur d'Alene Tribe*, 521 U.S. at 283 (refusing to apply *Ex parte Young* because the suit "would divest the State of its sovereign control over submerged lands, lands with a unique status

in the law and infused with a public trust the State itself is bound to respect"). For example, the *Ex parte Young* exception does not permit federal district courts to order state officials to conform their conduct to state law because, as the Supreme Court reasoned, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106.

Yet, this case presents a greater intrusion. A federal court ordering a state to *waive its sovereign immunity* would be the greatest intrusion on the *state's sovereignty*. This Court refuses to do so. As such, sovereign immunity bars Count Eighteen of the proposed third amended complaint because the *Ex parte Young* exception is inapplicable for the relief sought.[20]

Accordingly, because the § 1983 claims in the proposed third amended complaint are barred by sovereign immunity, Plaintiff's Motion for Leave to File a Third Amended Complaint, (ECF No. 53), is **DENIED** as futile.

### 3. The Duty of Candor

The allegations in this case are disturbing; almost as disturbing is the fact that both Plaintiff and the Defendants found it appropriate to assert arguments that are plainly contrary to well-established, controlling caselaw without any attempt to distinguish the present facts from those

---

[20] WVBRIM also argues that the *Ex parte Young* exception does not apply because Price is only one of a five member board, (ECF No. 62 at 13), and, alone, does not have the authority to procure additional insurance. However, the Fourth Circuit recently rejected this argument based on *stare decisis*. *Gibbons*, 99 F.4th at 214 (rejecting board members' argument that the *Ex parte Young* exception does not apply when the authority to act rests entirely with a board as a whole rather than with individual members). WVBRIM also argues that forcing it to procure additional insurance would require expenditure of state monies. (ECF No. 32 at 13.) However, the Fourth Circuit has clearly instructed that "simply because the implementation of such prospective relief would require the expenditure of substantial sums of money does not remove a claim from the *Ex parte Young* exception. *Ex parte Young* permits federal courts to enjoin state officials to conform their conduct to the requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Odom*, 290 F.3d at 185 (internal quotations and citations omitted); *see also CSX Transp. Inc., v. Bd. Of Public Works of State of W. Va.*, 138 F.3d 537, 541 (4th Cir. 1998) ("[T]he Fourth Circuit has explained that *Ex parte Young* relief may be still available despite its impact on the state treasury.") (citing *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 662 (4th Cir. 1989)).

cases—and, sometimes, without even mentioning those binding cases at all.  This goes beyond advocacy.  This also goes beyond being sloppy.  This type of omission treads dangerously close to the realm of violating the duty of candor.  Loc. R. Civ. P. 83.7; W. Va. R. Prof. Cond. 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of . . . law to a tribunal."); *see also U.S. v. Shaffer Equipment Company*, 11 F.3d 450, 458 (4th Cir.1993) ("[N]either these rules nor the entire Code of Professional Responsibility displaces the broader general duty of candor and good faith required to protect the integrity of the entire judicial process.").

To be crystal clear: the duty of candor plays second fiddle to none.

This is a serious warning to all parties in this matter.[21]  Moving forward, this behavior will be met with appropriate sanctions.  *See, e.g.*, 28 U.S.C. § 1927; Fed. R. Civ. P. 11; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (discussing the Court's inherent authority to sanction litigants and attorneys who violate the duty of candor to the court in bad faith, vexatiously, wantonly, or for oppressive reasons); *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986) (explaining that these sanctions include "disbar[ing] or suspend[ing] lawyers from practice").  Stop wasting the time of the Court, opposing counsel, and your own clients.  More importantly, stop undermining the integrity of the judicial system.

## *IV.    CONCLUSION*

For these reasons, FSUBOG's Motion to Dismiss, (ECF No. 13), is **GRANTED**, WVBRIM's Motion to Dismiss, (ECF No. 12), is **GRANTED**, and Plaintiff's Motion to Amend, (ECF No. 53), is **DENIED**.

**IT IS SO ORDERED**.

---

[21] The Court notes that it has already, very recently, warned Steptoe & Johnson PLLC for this same behavior.  *See Wickline v. Cumberledge*, No. 2:23-CV-00799, 2025 WL 1426832, at *5 (S.D. W. Va. May 16, 2025) (Johnston, J.).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          July 3, 2025

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE