IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DONNA R. SPURLING,

          Plaintiff,

v.                                  CIVIL ACTION NO. 2:24-cv-00614

METROPOLITAN LIFE INSURANCE COMPANY, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss filed by Monongalia County General Hospital Company D/B/A Mon General Hospital ("Mon General Hospital"). (ECF No. 15.) For the reasons discussed below, the motion is **DENIED**.

### I.    BACKGROUND

This matter arises out of an asbestos contamination in the State of West Virginia. (*See generally* ECF No. 1-4.) According to the Second Amended Complaint, the State became aware of the existence and dangers of asbestos in certain hospitals, colleges, and universities as early as 1984. (*See, e.g.*, *id.* at 15–16, ¶¶ 20–24.) Despite this knowledge, though, Plaintiff claims that the State did not "inform or warn" anyone of the presence or dangers of asbestos. (*See, e.g.*, *id.* at 34–35, ¶¶ 73, 77, 79, 81.)

In February 2022, Plaintiff was diagnosed with incurable lung cancer. (ECF No. 1-4 at 11–12, ¶¶ 1, 6.) As a lifelong non-smoker, (*id.* at 12, ¶ 6), she blames this diagnosis on her alleged

1

exposure to asbestos while she was a nursing student at Fairmont State University from 1998 through 2004,[1] (*id.* at 14, ¶ 17).

Consequently, Plaintiff filed a lawsuit in the Circuit Court of Kanawha County, West Virginia on January 12, 2024. (ECF No. 1-1 at 2.) The Second Amended Complaint names Metropolitan Life Insurance Company ("MetLife"), Mon General Hospital, United Hospital Center, Inc. ("United Hospital"), West Virginia Health System, Inc. D/B/A West Virginia University Health System ("WVU Health"), Fairmont State University Board of Governors ("FSUBOG"), and West Virginia Board of Risk and Insurance Management ("WVBRIM") as defendants, (*see* ECF No. 1-4 at 10), and asserts eighteen (18) causes of action against these defendants,[2] (*see id.* at 36–78).

On October 25, 2024, FSUBOG removed this action. (ECF No. 1.) Although the causes of action in the Second Amended Complaint are unclear, to say the least, the following six counts remain: (1) Count One: Negligence against "Premises Owner Defendants;"[3] (2) Count Two: "Intentional Tort" against Premises Owner Defendants; (3) Count Three: "Misrepresentations" against the Premises Owner Defendants; (4) Count Four: undefined claim against Mon General Hospital; (5) Count Five: undefined claim against WVU Health; (6) Count Six: undefined claim against United Hospital. (ECF No. 1-4 at 36–47.)

---

[1] Specifically, Plaintiff claims she was exposed to asbestos at the following hospitals and medical facilities during her nursing education program: (1) Mon General Hospital in Morgantown, West Virginia; (2) Chestnut Ridge Center in Morgantown, West Virginia; (3) Fairmont Medical Center in Fairmont, West Virginia; and (4) United Hospital Center in Clarksburg, West Virginia. (ECF No. 1-4 at 14, ¶ 17.) Plaintiff also claims that she was exposed to asbestos in various buildings at Fairmont State University. (*Id.*, ¶ 18.)

[2] MetLife was later voluntarily dismissed as a defendant, (ECF No. 77), and FSUBOG and WVBRIM were later involuntarily dismissed, (ECF No. 89). As such, only six (6) counts remain.

[3] Although the Second Amended Complaint does not define which defendants constitute the "Premises Owner Defendants," (*see generally* ECF No. 1-4), these defendants appear to be Mon General Hospital, United Hospital, and WVU Health, (*see id.* at 34–35).

On December 9, 2024, Mon General Hospital filed the pending motion to dismiss as to Counts Two and Three. (ECF Nos. 15, 16.) WVU Health and United Hospital joined the motion. (ECF Nos. 19, 20.) A response, (ECF Nos. 28, 29), and reply, (ECF No. 35), were filed. As such, this motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). Thus, a case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.*; *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (When ruling on a motion to dismiss, courts must "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff"); *see also Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (explaining that, "[i]n considering a motion to dismiss, the court should accept as true all well-pleaded allegations").

The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).

### III. DISCUSSION

Defendants Mon General Hospital, WVU Health, and United Hospital (collectively "Defendants") move to dismiss Counts Two and Three against them in the Second Amended Complaint for failure to state a claim. (*See* ECF Nos. 15, 16, 19, 20.) Plaintiff maintains that she has adequately stated claims under these counts. (*See* ECF Nos. 28, 29.) Each cause of action is discussed in turn below.

#### A. Count Two: "Intentional Tort"

Count Two evidently alleges a claim for battery. (ECF No. 28 at 2, ¶ 4; *see also* ECF No. 29 at 6–10.) The Supreme Court of Appeals of West Virginia ("SCAWV") has adopted the following definition of battery:

> [A]n actor is subject to liability to another for battery if (a) he acts *intending* to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

*Funeral Servs. by Gregory, Inc. v. Bluefield Cmty. Hosp.,* S.E.2d 79, 82 (W. Va. 1991) (quoting Restatement (Second) of Torts § 13 (1965)), *overruled on other grounds by Courtney v. Courtney,* 437 S.E.2d 436 (W. Va. 1993)).

In this case, Plaintiff's battery claim is premised upon Defendants' failure to warn her of the presence and dangers of asbestos, which caused her cancer. (*See* ECF No. 1-4 at 40.) Defendants seemingly challenge both elements, (*see* ECF No. 35 at 2–5), which are addressed in turn below.

##### 1. Intent

"In order to be liable for a battery, an actor must act with the intention of causing harmful or offensive contact with a person." *West Virginia Fire & Casualty Co. v. Stanley*, 602 S.E.2d

483 (W. Va. 2004). Such intent is satisfied if "the actor desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it." *Funeral Survs. By Gregory, Inc.*, S.E. 2d at 82 (quoting Restatement (Second) of Torts § 13 (1965)).

Here, Count Two alleges that Defendants "had actual knowledge of the dangers to [Plaintiff] of asbestos exposure" but "deliberately, intentionally, and purposefully withheld such information." (ECF No. 1-4 at 40, ¶ 93.) Plaintiff claims that Defendants did not "warn of the presence of asbestos," "warn of the hazards of asbestos," "issue letters or notices to persons exposed," "warn of the need for monitoring," or advise as to medical findings concerning the dangers of asbestos. (*Id.*) Plaintiff also claims that Defendants "frustrated the publication of articles on the asbestos health hazards in literature" and "suppress[ed] the dissemination of information to [Plaintiff] concerning the hazards of asbestos exposure." (*Id.*) According to Plaintiff, these were "deliberate, intentional and purposeful acts," which caused her lung cancer and other damages. (*Id.* ¶ 94.)

Defendants contend that these "general" and "vague" allegations are insufficient. (*See* ECF No. 35 at 2–3.) Specifically, Defendants argue Plaintiff did not allege that Defendants "intentionally exposed her to asbestos with the goal of causing her to develop lung cancer 20+ years later." (*Id.* at 3 (calling such an allegation "ludicrous in the extreme").) However, that argument conflates the intent to cause harmful contact with the intent to cause a specific injury. *See McKenzie v. Sevier*, 854 S.E.2d 236, 246 (W. Va. 2020) (finding that it was "beyond dispute" that the defendant committed battery when he punched the plaintiff in the face because the defendant "intended to make contact with [the plaintiff]'s face when he punched him, knowing

that it would cause harm, at least to [the plaintiff]'s face, even if he did not contemplate or intend the extent to which [the plaintiff] was ultimately harmed").[4]

Instead, the question is whether Plaintiff alleged that Defendants intended to expose her to asbestos or believed that the consequences were substantially certain to result from their actions. (*See also* ECF No. 29 at 8 (claiming that Plaintiff's allegations make it clear that Defendants were substantially certain a harmful contact would occur).) To that extent, it is plausible. Plaintiff claims that Defendants knew of the presence and dangers of asbestos but intentionally did not warn anyone about it.[5] What else could be expected to occur from Defendants' alleged omissions other than people being exposed to asbestos?[6]

### 2. Harmful Contact

A person suffers harmful bodily contact when there is a "physical impairment of the condition of [the] body, or physical pain or illness." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 95 (4th Cir. 2011) (quoting Restatement (Second) of Torts § 15). The Second Restatement of Torts provides that "the term 'physical impairment' includes any alteration in the

---

[4] Indeed, Defendants claim that "for a battery to have occurred, the alleged tortfeasor must have acted with the intent to cause the injured party to suffer a *specific* 'harmful contact,' and succeed in doing so either directly or indirectly." (ECF No. 35 at 3 (emphasis added).) For support, Defendants cite to Restatement (Second) of Torts § 13 (1965) and *Rhodes*, 657 F. Supp. 2d at 772-73—neither of which support this assertion. "Did counsel not expect the Court to (1) do its own research when deciding this motion, or (2) even bother reading the [two] [authorities] they cited in support of their position?" *See Wickline v. Cumberledge*, No. 2:23-CV-00799, 2024 WL 3416282, at *8 (S.D. W. Va. July 15, 2024) (show cause order as to why sanctions should not be imposed). If it was not already clear, the Court is beyond exasperated with this type of "advocacy." *Spurling v. Metro. Life Ins. Co.*, No. 2:24-CV-00614, 2025 WL 1840669, at *1 (S.D.W. Va. July 3, 2025) (threatening sanctions).

[5] Defendants note that Count Two does not assert "any allegation relative to a 'substantial certainty.'" (ECF No. 35 at 4.) However, Plaintiff does not have to use specific terms to allege a theory, *see Iqbal*, 556 U.S. at 678 (only requiring that factual allegations allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged), and, in fact, such a "formulaic recitation" of an element would be ignored anyway, *see Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

[6] Although Defendants balk at this theory because, by extension, it would mean that they were also substantially certain to be exposed to asbestos, (*see* ECF No. 35 at 4–5 (asserting that such a claim would be frivolous)), an intelligent defendant is not an essential element of battery. Further, Defendants' argument ignores the very real possibilities that those decision-makers would simply not go to the asbestos-infected buildings—at least not without proper personal protective equipment.

7

structure or function of any part of the body, even when such structural change does not cause other harm." *Id.* (same). However, the SCAWV has not adopted this definition and, instead, "expressly has required that a plaintiff alleging a battery demonstrate 'actual physical impairment.'" *Id.* (quoting *Funeral Survs. By Gregory, Inc.*, S.E. 2d at 82).

In the pending motion to dismiss, Defendants assert "the proposition that mere inhalation of chemicals cannot support a battery claim, absent more of a showing of 'harmful or offensive contact,' such as impairment, pain, or illness." (ECF No. 35 at 2 (internal citations omitted).) Yet, Plaintiff did not allege a mere exposure to asbestos. She claims that she developed terminal cancer from her asbestos exposure. (*See* ECF No. 1-4 at 11, ¶ 1; *see also id.* at 79, ¶ 267 (alleging that she suffers from severe physical pain as a result of her cancer).) Thus, the Court has no difficulty in determining that Plaintiff has adequately pleaded a harmful contact.

Therefore, Defendants' Motion is **DENIED** as to Count Two.

### B. Count Three: "Misrepresentations"

Count Three evidently alleges a negligent misrepresentation claim. (ECF No. 28 at 3, ¶ 8; *see also* ECF No. 29 at 11–12.) Under West Virginia law, there are three elements for a claim of negligent misrepresentation: the defendant: 1) owed a duty to provide the plaintiff with information; 2) made an erroneous statement when in fact the defendant had no knowledge about the subject, and 3) thereby misled the plaintiff, causing the plaintiff's injury. *HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-CV-00668, 2013 WL 312871, at *10 (S.D.W. Va. Jan. 25, 2013) (Chambers, J.) (citing *Folio v. City of Clarksburg*, 655 S.E.2d 143, 151 (W.Va. 2007)). The first element requires that "[Plaintiff] maintained a special relationship or duty to [Defendants]." *Kidd v. Mull*, 595 S.E.2d 308, 317 (W. Va. 2004). The second element can be met "when the defendant

8

makes an erroneous statement (1) with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; or (3) under circumstances in which the person making it ought to have known if he did not know of its falsity." *Resh*, No. 3:12-CV-00668, 2013 WL 312871, at *10 (quoting *Folio*, 655 S.E.2d at 151).

In this case, Plaintiff baldly alleges that Defendants "falsely represented facts, including the dangers of asbestos exposure to her" even though they "had actual knowledge of said dangers to asbestos." (ECF No. 1-4 at 41, ¶ 96.) Instead of attacking the sufficiency of the second element, though, Defendants focus on the first. (*See* ECF No. 35 at 5–8.) They claim that they neither owed a duty to nor had a special relationship with Plaintiff. (*See id.*)

The parties agree that, under West Virginia law, employers owe a duty to employees and even independent contractor's employees to provide a reasonably safe place to work. (*See* ECF Nos. 29 at 11; 35 at 8.) Undoubtedly, the SCAWV has recognized as such:

> An employer owes a duty to provide a reasonably safe place to work to employees of independent contractors who are on the premises. This duty includes the duty to warn of latent defects existing before the work is started that are known to the employer, but are not readily observable by the employee.

*Pasquale v. Ohio Power Co.*, 418 S.E.2d 738, 751 (W. Va. 1992).

The issue is that Plaintiff, as a student working at Defendants' hospitals, was not technically an employee. (*See* ECF No. 35 at 8.) Defendants acknowledge that "no [] case law exists" that extends *Pasquale* to cover non-employed students. (*Id.*) Thus, this Court must predict how the SCAWV would rule on this state law issue. *See Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 224 (4th Cir. 2025).

To that extent, protecting employees but not students doing similar work alongside those employees seems ostensibly inequitable. However, there may well be differences in the agency

9

relationships. Nevertheless, neither party briefed this issue. (*See generally* ECF Nos. 15, 16, 19, 20, 28, 29, 35.) Consequently, the Court declines to consider the issue at this time.

Therefore, Defendants' Motion to Dismiss is **DENIED** as to Count Three.

### IV.    CONCLUSION

For these reasons, Mon General Hospital's Motion to Dismiss, (ECF No. 15), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    August 18, 2025

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE